**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

ABERCROMBIE & FITCH TRADING CO.,
an Ohio Corporation,

Plaintiff,

vs.

ALELIA HALL a/k/a ALELIA HALL
THOMPSON, an individual;
CHIC FRAGRANCE CO. LLC, a
Pennsylvania limited liability company;
DOVR BUSINESS CONSULTING, LLC, a
Delaware limited liability company;
NATHAN HINDS ENTERPRISES, LLC, a
Delaware limited liability company; and
SCRANTON AND WALES, LLC, a
Pennsylvania limited liability company,

Defendants.
_______________________________________/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Abercrombie & Fitch Trading Co., an Ohio Corporation ("Abercrombie" or "Plaintiff"), hereby sues Defendants, Alelia Hall a/k/a Alelia Hall Thompson, an individual; Chic Fragrance Co. LLC, a Pennsylvania limited liability company; Dovr Business Consulting, LLC, a Delaware limited liability company; Nathan Hinds Enterprises, LLC, a Delaware limited liability company; and Scranton and Wales, LLC, a Pennsylvania limited liability company (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All

Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Abercrombie's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2. Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through various e-commerce stores and social media accounts accessible and doing business in Florida operating under the e-commerce store names and social media accounts as identified in Paragraphs 7 through 11 and outlined in Paragraph 27 below (collectively, the "E-commerce Store Names"). Defendants operating e-commerce stores on Amazon, Walmart, and Temu are automatically required to ship to consumers in at least all 48 contiguous states, and none of the Defendants at issue have opted out of shipping products to the State of Florida, including this district. The Defendants are therefore directly engaging in the advertisement, promotion, offer for sale and/or sale of counterfeit and infringing products within this district and the State of Florida as alleged herein.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) since a substantial part of the Defendants' acts relating to Abercrombie's claims occurred in this district. Additionally, Defendants Chic Fragrance Co. LLC, Dovr Business Consulting, LLC, Nathan Hinds Enterprises LLC, and Scranton and Wales, LLC as business entities are subject to personal jurisdiction in this district. Defendants have each advertised, offered for sale and/or sold fragrance products bearing counterfeit trademarks to consumers in the State of Florida.

## THE PLAINTIFF

4. Plaintiff Abercrombie & Fitch Trading Co. is a corporation organized and existing under the laws of the state of Ohio with an office and principal place of business located at 6301 Fitch Path, New Albany, Ohio 43054. Genuine Abercrombie products are sold in its retail locations throughout the United States, including within this district, and through its online retail websites. Abercrombie has been engaged in the business of distributing throughout the United States, including within this district, clothing, fragrance, and related goods under its well-known and federally registered trademarks, including those identified below. Abercrombie offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States. Defendants, through the sale and offers to sell of counterfeit and infringing Abercrombie branded products, are directly and unfairly competing with Abercrombie's economic interests in the United States, including the State of Florida and causing Abercrombie irreparable harm and damage within this jurisdiction.

5. Abercrombie suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as the Defendants herein, who wrongfully reproduce and counterfeit Abercrombie's trademarks for the twin purposes of (i) duping and confusing the consumer public and (ii) earning substantial profits across their e-commerce stores and social media accounts.

6. To combat the harm caused by the actions of Defendants and others engaging in similar conduct, each year Abercrombie expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media

platforms, has created an environment that requires Abercrombie to expend significant resources across a wide spectrum of efforts to protect both consumers and itself from confusion and the erosion of the goodwill embodied in Abercrombie's brand.

## THE DEFENDANTS

7. Upon information and belief, Defendant Alelia Hall a/k/a Alelia Hall Thompson ("Defendant Hall") is an individual residing at 219 Noble Rd, South Abington Township, PA 18411, who operates all of the E-commerce Store Names at issue in this action; specifically, Amazon store, **The Dovr Store**; Walmart store, **Chic Fragrance Co.**; Temu store, **Scranton Wales**; website, **Chicfragranceco.com**; Temu store, **Loop Lot**; Facebook account, **Chic Fragrance Co. a/k/a chicfragranceco**; TikTok account, **chicfragranceco**; Instagram account, **chicfragranceco**; and Instagram account, **thechicfragranceco**. Defendant Hall is an active, conscious, moving force behind the alleged infringement.

8. Upon information and belief, Defendant Chic Fragrance Co. LLC ("Defendant Chic Fragrance Co. LLC") is a Pennsylvania limited liability company with its principal address located at 502 W 7TH ST, STE 100, Erie, PA 16502. Defendant Hall is identified as the governor of the LLC. Defendant Chic Fragrance Co. LLC operates Walmart store, **Chic Fragrance Co.** and website, **Chicfragranceco.com**. The Walmart store identifies the following address for the LLC: 2036 N Main Ave, Scranton, PA 18508, US.

9. Upon information and belief, Defendant Dovr Business Consulting, LLC ("Defendant Dovr Business Consulting, LLC") is a Delaware limited liability company with its principal address located at 2036 N Main Ave, Scranton, PA 18508. Defendant Hall is identified as the founder and chief executive officer for the LLC. Defendant Dovr Business Consulting, LLC

operates Amazon store, **The Dovr Store**. The Amazon store identifies the same address listed above for the LLC.

10. Upon information and belief, Defendant Nathan Hinds Enterprises, LLC ("Defendant Nathan Hinds Enterprises, LLC") is a Delaware limited liability company with its principal address located at 611 Adams Avenue, Scranton, PA 18510. Defendant Nathan Hinds Enterprises, LLC operates Temu store, **Loop Lot**. The Temu store identifies the same address listed above for the LLC. A SmartLinx Person Report for Defendant Hall identifies the 611 Adams Avenue address in connection with Defendant Hall.

11. Upon information and belief, Defendant Scranton and Wales, LLC ("Defendant Scranton and Wales, LLC") is a Pennsylvania limited liability company with its principal address located at 502 W 7TH ST, STE 100, Erie, PA 16502. Defendant Scranton and Wales, LLC operates Temu store, **Scranton Wales**. The Temu store identifies the following address for the LLC: 611 Adams Avenue, Scranton, Pennsylvania 18510. A SmartLinx Person Report for Defendant Hall identifies the 611 Adams Avenue address in connection with Defendant Hall.

12. Defendants target their business activities towards consumers throughout the United States, including within this district, through the operation of, at least, the E-commerce Store Names.

13. Defendants are the past and present controlling force behind the sale of fragrance products bearing and/or using counterfeits and infringements of Abercrombie's trademarks as described herein.

14. Defendants directly engage in unfair competition with Abercrombie by advertising, offering for sale, and/or selling fragrance products bearing and using counterfeits and infringements of one or more of Abercrombie's trademarks to consumers within the United States

and this district through their commercial E-commerce Store Names, as well as additional e-commerce store, social media account, or seller identification aliases not yet known to Abercrombie. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of Abercrombie branded fragrance products bearing counterfeits of Abercrombie's world famous trademarks into the State.

15. Defendants have registered, established, or purchased, and maintained their respective commercial e-commerce stores and social media accounts operating under the E-commerce Store Names.

16. Defendants will likely continue to register or acquire new e-commerce stores, social media accounts, or other aliases, as well as related payment accounts, for the purpose of selling and offering for sale fragrance products bearing and using counterfeit and confusingly similar imitations of one or more of Abercrombie's trademarks unless enjoined.

17. Defendants' e-commerce stores, social media accounts, associated payment accounts, and any other alias e-commerce stores, social media accounts, or seller identification names used in connection with the sale of non-genuine fragrance products bearing and using Abercrombie's trademarks are essential components of their online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Abercrombie. Moreover, Defendants are using Abercrombie's famous name and associated trademarks to drive Internet consumer traffic to their e-commerce stores, thereby increasing the value of their e-commerce store names and decreasing the size and value of Abercrombie's legitimate marketplace and intellectual property rights at Abercrombie's expense.

## COMMON FACTUAL ALLEGATIONS

### Abercrombie's Business and Trademark Rights

18. Abercrombie is the owner of various federally registered trademarks, including but not limited to the following United States Trademark Registrations (the "Abercrombie Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ABERCROMBIE & FITCH | 1,999,665 | September 18, 1996 | IC 003 – Cologne |
| FIERCE | 2,713,598 | May 6, 2003 | IC 003 – Personal care products namely, fragrances |
| ABERCROMBIE | 3,343,871 | November 27, 2007 | IC 003 – Fragrances, namely, colognes and perfumes. |
| ABERCROMBIE & FITCH | 4,361,667 | July 2, 2013 | IC 003 – Body lotion; Body spray used as a personal deodorant and as fragrance; Body sprays; Cologne; Deodorants for personal use; Fragrances for personal use; Hair shampoos; Perfume and Shower and bath gel |

The Abercrombie Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Abercrombie Marks are attached hereto as Composite Exhibit "1."

19. The Abercrombie Marks have been used in interstate commerce to identify and distinguish Abercrombie's high-quality goods for an extended period.

20. The Abercrombie Marks have been used in commerce by Abercrombie long prior to Defendants' use of copies of those Marks. The Abercrombie Marks have never been assigned or licensed to Defendants in this matter.

21. The Abercrombie Marks are symbols of Abercrombie's quality, reputation and goodwill and have never been abandoned. Abercrombie has carefully monitored and policed the use of the Abercrombie Marks.

22. The Abercrombie Marks are well-known and famous and have been for many years. Abercrombie expends substantial resources developing, advertising, and otherwise promoting the Abercrombie Marks and products bearing the Abercrombie Marks.

23. Abercrombie extensively uses, advertises, and promotes the Abercrombie Marks in the United States in association with the sale of high-quality goods.

24. As a result of Abercrombie's efforts, consumers readily identify merchandise bearing or sold using the Abercrombie Marks, as being high-quality goods sponsored and approved by Abercrombie.

25. Accordingly, the Abercrombie Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

26. Genuine goods bearing the Abercrombie Marks are widely legitimately advertised and promoted by Abercrombie and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Abercrombie's overall marketing and consumer education efforts. Thus, Abercrombie expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Abercrombie to educate consumers fairly and legitimately about the value associated with its brand, the goods sold thereunder, and the problems associated with the counterfeiting of Abercrombie's trademarks.

**Defendants' Infringing Conduct**

27. The present action arises from Defendants' promotion, advertisement, distribution, offer for sale, and/or sale of non-genuine fragrance products bearing and using counterfeit marks identical or substantially indistinguishable to the Abercrombie Marks (the "Accused Goods") to consumers in Florida and nationwide, through at least the below identified E-commerce Store Names:

| Platform | E-Commerce Store Name | Store URL |
|---|---|---|
| Amazon | The Dovr Store | https://www.amazon.com/sp?ie=UTF8&seller=AORXZ15D3P88S |
| Walmart | Chic Fragrance Co. | https://www.walmart.com/seller/102783465 |
| Temu | Scranton Wales | https://www.temu.com/mall.html?_bg_fs=1&mall_id=741070851953286 |
| Website | Chicfragranceco.com | https://www.chicfragranceco.com |
| Temu | Loop Lot | https://www.temu.com/mall.html?_bg_fs=1&mall_id=741070851721134 |
| Facebook | Chic Fragrance Co. a/k/a chicfragranceco | https://www.facebook.com/chicfragranceco/ |
| TikTok | chicfragranceco | https://www.tiktok.com/@chicfragranceco?_t=ZP-95Z13s6bMbO |
| Instagram | chicfragranceco | https://www.instagram.com/chicfragranceco/ |
| Instagram | thechicfragranceco | https://www.instagram.com/thechicfragranceco/ |

(See Composite Exhibit "2" hereto, true and correct copies of the web pages displaying the Abercrombie branded fragrance products promoted, advertised, distributed, offered for sale, and/or sold on Defendants' E-commerce Store Names, including photographs of fragrance items received by Abercrombie.)

28. Specifically, Defendants are using the Abercrombie Marks to initially attract online consumers and drive them to their e-commerce stores operating under the E-commerce Store Names. Defendants are using identical copies of the Abercrombie Marks for different quality goods. Abercrombie has used its trademarks extensively and continuously before Defendants began offering non-genuine and confusingly similar imitations of its merchandise.

29. Defendants' Accused Goods are of a quality substantially different than that of Abercrombie's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling the Accused Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Abercrombie despite Defendants' knowledge that they are without authority to use the Abercrombie Marks.

30. The Accused Goods that Defendants have offered for sale and/or sold within this district are very likely to cause confusion for consumers, including Abercrombie's customers, who, at the time of initial interest, sale, and/or in the post-sale setting are led to believe that the Accused Goods are genuine goods originating from, associated with, and/or approved by Abercrombie due to statements made by Defendants and the marks being identical, substantially indistinguishable, or confusingly similar to the Abercrombie Marks. For example, the About Us page on the website, **Chicfragranceco.com** states, "At Chic Fragrance Co., we're proud to offer a curated selection of luxury perfumes from the world's most iconic fragrance houses — all 100% authentic and guaranteed genuine." (See Composite Exhibit "2" hereto at Page 128.) Further, the social media accounts promote the fragrance products being offered for sale as, "Authentic designer scents" (quoting Defendants' Facebook account, **Chic Fragrance Co. a/k/a chicfragranceco**); "Authentic Luxury Fragrances | 100% Authentic Designer Perfumes" (quoting Defendants' TikTok account, **chicfragranceco**); and "Your destination for 100% authentic designer fragrances" (quoting Defendants' Instagram accounts, **chicfragranceco** and **thechicfragranceco**). (See Composite Exhibit "2" hereto at Pages 175, 185, 188, 196.)

31. Defendants advertise their e-commerce stores, including their Accused Goods offered for sale, to the consumer public via, at least, the E-commerce Store Names. In so doing,

Defendants improperly and unlawfully use one or more of the Abercrombie Marks without Abercrombie's permission.

32. Defendants are employing and benefiting from substantially similar advertising and marketing strategies based largely upon an unauthorized use of counterfeits and infringements of the Abercrombie Marks. Specifically, Defendants are using counterfeits and infringements of Abercrombie's famous name and the Abercrombie Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Abercrombie and non-Abercrombie goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Abercrombie's genuine goods. Defendants are causing harm to Abercrombie and the consumer public by (i) depriving Abercrombie and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Abercrombie's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Abercrombie Marks by viewing different quality products in either the pre or post sale setting, and/or (iii) increasing Abercrombie's overall cost to market its goods and educate consumers about its brand via the Internet.

33. Defendants are conducting and targeting their counterfeiting and infringing activities towards consumers and likely causing harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Abercrombie and the consumer public for their own benefit.

34. At all times relevant hereto, Defendants have had full knowledge of Abercrombie's ownership of the Abercrombie Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

35. On March 25, 2024, Abercrombie purchased a 3.4 FL OZ Abercrombie & Fitch Fierce cologne from Amazon store, **The Dovr Store**, to be shipped to Ohio. (See Composite Exhibit "2" hereto at Pages 3-26.) The Detailed Seller Information included the following information:

> Business Name: Dovr Business Consulting, LLC
> Business Address: 2036 N Main Ave
> Scranton
> Pennsylvania
> 18508
> US

36. Upon receipt and review of the item, Abercrombie confirmed the product purchased from Amazon store, **The Dovr Store** was counterfeit. Abercrombie further noted batch code number **272C-Y** was stamped on the fragrance bottle. Abercrombie filed a takedown with Amazon, and the counterfeit product was removed. The return address for the purchase identified the following address:

> PICK N PACK
> 137 FREIGHT DR
> WYTHEVILLE VA 24382

37. On December 9, 2025, Abercrombie purchased a 3.4 FL OZ Abercrombie & Fitch Fierce cologne from Walmart store, **Chic Fragrance Co.**, to be shipped to Ohio. (See Composite Exhibit "2" hereto at Pages 27-63.) The Seller StoreFront page included the following information, which identified the same address as Amazon store, **The Dovr Store**:

> Business Name: Chic Fragrance Co. LLC
> 2036 N Main Ave
> Scranton, PA 18508, US

38. Upon receipt and review of the item, Abercrombie confirmed the product purchased from Walmart store, **Chic Fragrance Co.** was counterfeit. Abercrombie further noted batch code

number **191F-Y** was stamped on the fragrance bottle. The return address for the **Chic Fragrance Co.** purchase identified the following address:

PICK N PACK
552 BLACKBERRY DRIVE
WYTHEVILLE, VA, 24382

39. On March 30, 2026, Abercrombie purchased a 3.4 FL OZ Abercrombie & Fitch Fierce cologne from Temu store, **Scranton Wales**, to be shipped to Ohio. (See Composite Exhibit "2" hereto at Pages 64-95.) The Store Information included the following information:

Business Name
Scranton and Wales, LLC

Address
611 Adams Avenue
Scranton
Pennsylvania
18510
United States

40. Upon receipt and review of the item, Abercrombie confirmed the product purchased from Temu store, **Scranton Wales** was counterfeit. Abercrombie further noted batch code number **191F-Y** was stamped on the fragrance bottle. The return address for the **Scranton Wales** purchase identified the following address, which was also identified as the return address for the purchase from Amazon store, **The Dovr Store**:

Nichole
137 FREIGHT DRIVE
WYTHEVILLE, VA 24382

41. On both May 27, 2026, and June 25, 2026, Abercrombie purchased a 3.4 FL OZ Abercrombie & Fitch Fierce cologne from website, **Chicfragranceco.com**, to be shipped to Ohio and Florida, respectively. (See Composite Exhibit "2" hereto at Pages 96-141.) The Contact Us

page included the following information, which matched the return address for the purchase from Walmart store, **Chic Fragrance Co.**:

Address: 552 Blackberry Dr Wytheville, VA 24382

42. Upon receipt and review of the items, Abercrombie confirmed the products purchased from website **Chicfragranceco.com** were counterfeit. Abercrombie further noted batch code number **191F-Y** was stamped on both fragrance bottles. The return address for both **Chicfragranceco.com** purchases identified the same address provided on the website Contact Us page, which as previously noted, was also the return address for the purchase from Walmart store, **Chic Fragrance Co.**:

CHIC FRAGRANCE CO.
552 BLACKBERRY DR
WYTHEVILLE, VA 24382

43. On July 17, 2026, Abercrombie purchased a 3.4 FL OZ Abercrombie & Fitch Fierce cologne from Temu store, **Loop Lot**, to be shipped to Florida. (See Composite Exhibit "2" hereto at Pages 142-173.) The Store Information included the following information, which was also the address identified in the Store Information for Temu store, **Scranton Wales**:

Business Name
Nathan Hinds Enterprises LLC

Address
611 Adams Avenue
Scranton
Pennsylvania
18510
United States

44. Upon receipt and review of the item, Abercrombie confirmed the product purchased from Temu store **Loop Lot** was counterfeit. Abercrombie further noted batch code number **191F-Y** was stamped on the fragrance bottle. The return address for the **Loop Lot** purchase identified

the following address, which Abercrombie had now seen in connection with Walmart store, **Chic Fragrance Co.** and website, **Chicfragranceco.com**:

NICHOLE
552 BLACKBERRY DRIVE
WYTHEVILLE, VA 24382

45. In addition to the overlapping shared physical addresses identified in Paragraphs 35 through 44 above, Abercrombie discovered almost all the products purchased share the same batch code. Specifically, as noted above, batch code number **191F-Y** appears on the bottom of the 3.4 FL OZ Abercrombie & Fitch Fierce cologne bottles purchased from Walmart store **Chic Fragrance Co.** on December 9, 2025; from Temu store, **Scranton Wales** on March 30, 2026; from **chicfragranceco.com** on May 27, 2026 and June 25, 2026; and from Temu store **Loop Lot** on July 17, 2026. (See Composite Exhibit "2" hereto at Pages 62-63, 95, 114, 141, 173.) This identical batch code indicates a common supply source.

46. Abercrombie also identified various social media accounts on Facebook, TikTok, and Instagram used to advertise and promote the counterfeit and infringing fragrance products and the website, **Chicfragranceco.com**. (See Paragraph 27 above and Composite Exhibit "2" hereto at Pages 174-201.) In fact, Defendant Hall is seen in a video on Instagram account, **chicfragranceco**, promoting Black Friday sales and various fragrances in stock that can be purchased via the **Chicfragranceco.com** website. (See id. at Page 194.)

47. Defendants have no license, authority, or other permission from Abercrombie to use any of the Abercrombie Marks in connection with the manufacturing, advertising, promoting, distributing, selling, and/or offering for sale of the Accused Goods. Defendants are using the Abercrombie Marks on the Accused Goods without Abercrombie's permission.

48. Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Abercrombie's rights for the purpose of trading on Abercrombie's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not enjoined by this Court, Abercrombie and the consumer public will continue to be harmed.

49. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' fragrance products offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Abercrombie. Moreover, Defendants' activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Defendants, the Accused Goods, and Abercrombie.

50. Upon information and belief, Defendants intend to continue to manufacture, advertise, promote, import, distribute, sell, and/or offer for sale the Accused Goods.

51. Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by Defendants.

52. Further, Defendants are, upon information and belief, likely to transfer or secrete their assets to avoid payment of any profits awarded to Abercrombie.

53. Abercrombie has no adequate remedy at law.

54. Abercrombie is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Abercrombie Marks. If Defendants' intentional counterfeiting and infringing, and unfairly competitive activities are not enjoined by this Court, Abercrombie and the consumer public will continue to be harmed while Defendants wrongfully earn a substantial profit.

55. The harm and damages sustained by Abercrombie have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and/or sale of their Accused Goods.

**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

56. Abercrombie hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 55 above.

57. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Abercrombie Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Accused Goods.

58. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing fragrance products bearing and using counterfeits and infringements of one or more of the Abercrombie Marks. Defendants are continuously infringing and inducing others to infringe the Abercrombie Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing Abercrombie branded goods.

59. Defendants' counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the consumer public as to the origin and quality of the Accused Goods.

60. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Abercrombie and are unjustly enriching Defendants with profits at Abercrombie's expense.

61. Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Abercrombie Marks in violation of Abercrombie's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

62. Abercrombie has suffered and will continue to suffer irreparable injury and damages while Defendants are unjustly profiting due to their above-described activities if they are not enjoined.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

63. Abercrombie hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 55 above.

64. Defendants' Accused Goods bearing, offered for sale, and sold using copies of one or more of the Abercrombie Marks have been widely advertised and offered for sale throughout the United States via the Internet.

65. Defendants' Accused Goods bearing, offered for sale, and sold using copies of at least one or more of the Abercrombie Marks are virtually identical in appearance to Abercrombie's genuine goods. However, Defendants' Accused Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Accused Goods.

66. Defendants have used in connection with their advertisement, offer for sale, and sale of their Accused Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and

have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Abercrombie's detriment.

67. Defendants have authorized infringing uses of one or more of the Abercrombie Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have also misrepresented to members of the consumer public that the Accused Goods being advertised and sold by them are genuine, non-infringing goods.

68. Additionally, Defendants are using counterfeits and infringements of one or more of the Abercrombie Marks to unfairly compete with Abercrombie and others for space within organic and paid search engine and social media results. Defendants are thereby (i) depriving Abercrombie of valuable marketing and educational space online which would otherwise be available to Abercrombie, and (ii) reducing the visibility of Abercrombie's genuine goods on the World Wide Web and across social media platforms.

69. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70. Abercrombie has no adequate remedy at law and has sustained injury and damages caused by Defendants' conduct. Absent entry of an injunction by this Court, Abercrombie will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are unjustly profiting.

## COUNT III - COMMON LAW UNFAIR COMPETITION

71. Abercrombie hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 55 above.

72. This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale, of goods bearing and/or using marks that are virtually identical to one or more of the Abercrombie Marks in violation of Florida's common law of unfair competition.

73. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Abercrombie Marks. Defendants are also using counterfeits and infringements of one or more of the Abercrombie Marks to unfairly compete with Abercrombie and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

74. Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Abercrombie Marks.

75. Abercrombie has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' actions while Defendants are unjustly profiting due to their above-described activities if not enjoined.

**<u>COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT</u>**

76. Abercrombie hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 55 above.

77. Abercrombie is the owner of all common law rights in and to the Abercrombie Marks.

78. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Accused Goods bearing and/or using one or more of the Abercrombie Marks.

79. Specifically, Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Abercrombie Marks.

80. Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Accused Goods bearing and/or using the Abercrombie Marks.

81. Abercrombie has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages because of Defendants' actions while Defendants are unjustly profiting due to their above-described activities if not enjoined.

**PRAYER FOR RELIEF**

82. WHEREFORE, Abercrombie demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Accused Goods; from infringing, counterfeiting, or diluting the Abercrombie Marks; from using the Abercrombie Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services

or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Abercrombie; from falsely representing themselves as being connected with Abercrombie, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Abercrombie; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Abercrombie Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Abercrombie, or in any way endorsed by Abercrombie and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Abercrombie's name or trademarks; and from otherwise unfairly competing with Abercrombie.

b. Entry of a permanent injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the Abercrombie Marks.

c. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Abercrombie's request, those acting in concert or participation as service providers to Defendants, who have notice of an injunction issued by the Court, shall cease hosting, facilitating access to, or providing any supporting service to any and all

e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the Abercrombie Marks.

d. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Abercrombie's request, Defendants and any Internet marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court immediately cease fulfillment of and sequester Defendants' inventory assets in its inventory, possession, custody, or control, and surrender those goods to Abercrombie for destruction.

e. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Abercrombie's request, Defendants and the authorized representative, officer, managing operators and/or administrators for any Internet marketplace website, e-commerce shipping partner, fulfillment center, warehouse, and/or storage facility who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of Defendants bearing one or more of the Abercrombie Marks in its inventory, possession, custody, or control, and surrender those goods to Abercrombie, together with any and all documents, information, paper and/or electronic data, and/or other tangible items pertaining to all services provided to or on behalf of Defendants.

f. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Abercrombie's request, Defendants and the top level domain (TLD) Registry for the E-commerce Store Name, or its administrator, including backend registry operators or administrators, place the relevant E-commerce Store Name, and any other e-commerce store names or domain names being used and/or controlled by

Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Abercrombie Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store names or domain names, thus removing them from the TLD zone files which link the relevant E-commerce Store Name, and any other e-commerce store names or domain names used by Defendants, to the IP addresses where the associated e-commerce store names are hosted.

g. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Abercrombie's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Abercrombie Marks at issue to Abercrombie's control so they may no longer be used for unlawful purposes.

h. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Abercrombie's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Abercrombie Marks via the e-commerce stores operating under the E-commerce Store Names, and upon Abercrombie's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Abercrombie Marks associated with or linked to the same sellers or linked to any other e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Abercrombie Marks.

i. Entry of an order requiring, upon Abercrombie's request, Defendants to request in writing permanent termination of any messaging services, e-commerce store names,

usernames, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, and social media website.

j. Entry of an order directing Defendants to file with this Court and serve on Abercrombie within thirty (30) days after entry of an injunction issued by the Court, a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

k. Entry of an order requiring Defendants to account to and pay Abercrombie for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Abercrombie be trebled, as provided for under 15 U.S.C. § 1117, or that Abercrombie be awarded statutory damages from Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

l. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Abercrombie's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

m. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Abercrombie's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Abercrombie all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or any other alias e-commerce store names used by Defendants presently

or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Abercrombie in partial satisfaction of the monetary judgment entered herein.

n. Entry of an award of pre-judgment interest on the judgment amount.

o. Entry of an order requiring Defendants, at Abercrombie's request, to pay the cost necessary to correct any erroneous impression the consumer public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

p. Entry of an order for any further relief as the Court may deem just and proper.

DATED: September 16, 2026. Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
Annie M. Solimini (Fla. Bar No. 1050009)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: Annie@smgpa.cloud

Attorneys for Abercrombie & Fitch Trading Co.